**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | |
|---|---|
| Corval Builders & Erectors, Inc., <br><br> *Plaintiff*, <br><br> v. <br><br> Markel American Insurance Company <br><br> *Defendant*. | Case No. _____ <br><br><br> **COMPLAINT** |

Plaintiff Corval Builders & Erectors, Inc., as and for its Complaint against Defendant Markel American Insurance Company, states and alleges as follows:

## INTRODUCTION

1.      Although procedurally complicated, this case is a straightforward coverage dispute arising out of a construction project in Corpus Christi, Texas. Through this action, Plaintiff Corval Builders & Erectors, Inc. seeks to recover damages it suffered stemming from a covered loss involving an insured of Defendant Markel American Insurance Company.

## THE PARTIES

2.      Plaintiff Corval Builders & Erectors, Inc. ("***Corval***") is incorporated under the laws of the State of Minnesota with its principal place of business in St. Paul, Minnesota.

1

3.      Defendant Markel American Insurance Company ("**Markel**") is incorporated under the laws of the Commonwealth of Virginia with its principal place of business in Glen Allen, Virginia.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity among the parties and the amount in controversy exceeds $75,000.00, excluding interest and costs.

5.      This dispute is between citizens of different states. *See* 28 U.S.C. § 1332(a)(1). Corval—the sole plaintiff—is a citizen of Minnesota. Markel—the sole defendant—is a citizen of Virginia.

6.      The amount in controversy exceeds $75,000.00, excluding interest and costs. *See* 28 U.S.C. § 1332(a). Corval seeks, among other things, coverage under an insurance policy issued by Markel for a loss in the amount of $1,631,585.00.

7.      Venue in the Southern District of Texas is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Corval's claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. The Project

8.      Magellan Midstream Partners, L.P. ("**Magellan**") is the owner of the Corpus Christi Tanks 138& 139 Project (the "**Project**").

9.      Magellan and Corval entered into Major Construction Contract #15004, dated October 11, 2017 (the "**Prime Contract**"), which governs the Project. Under the

Prime Contract, Corval agreed to perform certain work to provide storage, piping, and equipment necessary to support the Corpus Christi Condensate Splitter, as set forth in the Scope of Work, which was appended to the Prime Contract as Appendix A.

### B. The Purchase Order

10.    In or around October 2017, Corval hired Paragon Fabricators, Inc. ("*Paragon*") as a subcontractor on the Project.

11.    Corval and Paragon entered into Purchase Order #3481062, dated October 9, 2017 (the "*Purchase Order*"), under which Paragon agreed to perform pipe fabrication and welding on the Project's pipes that were owned by Magellan and were in Paragon's care, custody, and control.

### C. The Markel Policy

12.    Paragon is a named insured included on an insurance policy issued by Markel, policy number MKL5IM0050382, with a policy period of December 6, 2017 to December 6, 2018 (the "*Policy*").

13.    The Policy includes a Commercial Output Program Property Coverage Part (the "*Coverage Part*").

14.    The Coverage Part includes a section of coverages titled "Business Personal Property." The "Business Personal Property" section states, in relevant part, as follows:

> 1. **Covered Business Personal Property** – Covered business personal property means "your" business personal property in buildings or structures at a "covered location" or in the open (or in vehicles) on or within 1,000 feet of a "covered location". This includes:
>
> […]

    e.  personal property which will become a part of "your" installation, fabrication, or erection project while:

      1)  at the site of installation, fabrication, or erection; or

      2)  while in temporary storage awaiting installation, fabrication, or erection.

[…]

    g.  personal property of others. This means personal property of others that is in "your" care, custody, or control.

Personal property of others includes property that is sold under an installation agreement where "your" responsibility continues until the property is accepted by the buyer.

"Our" payment for loss to personal property of others will only be for the benefit of the owners of the personal property.

15.    Losses arising under coverages in the "Business Personal Property" section of the "Coverage Part" are subject to an aggregate Policy limit of $1,727,500.00.

16.    The Policy also includes an Amendatory Endorsement (Texas), paragraph 18 of which adds the following provision to the "Other Conditions" section of the Coverage Part:

**Bankruptcy** – Bankruptcy or insolvency of "you" or "your" estate will not relieve "us" of "our" obligations under any legal liability coverage for loss or damage to property of others that is in "your" care, custody, or control and is cause by an "accident" to "covered equipment".

4

**D. The Project's Pipes Sustained Damage While In Paragon's Care, Custody, and Control**

17.     In or around December 2017 and January 2018, Paragon fabricated piping and performed welding on the Project's pipes. Specifically, sections of pipe and related pipe fittings and other components were delivered to Paragon's workshop, where Paragon fabricated the pipes to be used on the Project. The Project's pipes remained in Paragon's care, custody, and control throughout the fabrication process and until Paragon delivered the fabricated pipes to, and unloaded them at, the Project site. At all relevant times, Magellan owned the Project's pipes.

18.     In addition, Corval later discovered that Paragon, without specific written approval from Corval or from Magellan, had welded external attachment welds to pipes and fittings on the Project. It was also discovered that Paragon had performed multiple repairs to previous repairs.

19.     The Project's pipes that were owned by Magellan and were in Paragon's care, custody, and control sustained damage and also caused damage to other property at the Project site.

20.     Article 20.1 of the Prime Contract between Corval and Magellan (the Project's owner) requires Corval to "immediately remedy, repair or replace any Work not in compliance with this Contract … at Contractor's sole cost and expense." Magellan therefore compelled Corval—through, among other things, contractual setoffs provided for under the Prime Contract—to pay for the costs of replacing the Project's pipes and for other property. Specifically, Magellan performed the necessary repair work and then back-

charged Corval for that work by withholding a corresponding sum from the amounts owed to Corval. To date, Corval has billed Magellan $2,718,664.00 for work performed under the Prime Contract, of which Magellan has paid Corval $1,087,079.00. Magellan thus has withheld from Corval $1,631,585.00 because of Magellan's work repairing the damage to the Project's pipes.

21.     Corval thereby became legally and equitably subrogated to Magellan's claims, rights, and remedies arising from the damage to the Project's pipes.

22.     Losses relating to the pipes on the Project are covered by one or more coverages under the Business Personal Property and/or Supplemental Coverages sections of the Coverage Part.

23.     Corval is legally and equitably subrogated to all of Paragon's claims, rights, and remedies to seek recovery under the Policy for the ensuing losses relating to the pipes in Paragon's care, custody, or control.

E.  **Paragon's Bankruptcy**

24.     On December 5, 2017, Paragon commenced a bankruptcy case by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, Case No. 4:17-bk-36607 (ECF No. 1). On January 25, 2018 the Bankruptcy Court entered an order (ECF No. 11) directing Paragon's case to be jointly administered with petitions for relief filed by three companies related to Paragon.

25.     On May 14, 2018, the jointly administered bankruptcy cases were converted, under 11 U.S.C. § 1112(b), to a liquidation proceeding under Chapter 7 of Title 11 of the United States Code.

26.     On July 24, 2018, Corval filed a timely proof of claim (No. 9) in the bankruptcy proceeding. The next month, the Bankruptcy Court entered an order granting Corval relief from the automatic stay to "liquidat[e] its claim and mak[e] insurance claims on [Paragon's] policies." Corval later filed an amended proof of claim (No. 9–2) in the amount of $1,631,585.00.

## F.  The Adversary Proceeding

27.     On May 7, 2019, Corval commenced an adversary proceeding against Paragon in Paragon's bankruptcy action in the United States Bankruptcy Court for the Southern District of Texas (the "*Court*"), Adversary Proceeding No. 19-ap-03458 (the "*Adversary Proceeding*").

28.     On July 23, 2019, Corval filed and served a First Amended Complaint in the Adversary Proceeding.

29.     Corval's First Amended Complaint sought a variety of declaratory relief against Paragon and against the Allison D. Byman, in her capacity as the Chapter 7 Trustee for Paragon (the "*Trustee*").

**30.**     On April 15, 2021, the Court entered Final Judgment ("*Judgment*") in the Adversary Proceeding. The Judgment decrees, *inter alia*, that "Corval is legally and equitably subrogated to the Debtor's and the Trustee's  claims, rights, and remedies under an insurance policy issued by Markel American Insurance Company … policy number

7

MKL51M0050382 … to recover losses attributable to property damaged by, and property damage caused by, Debtor's negligent or defective work on the Project." Additionally, Corval is granted judgment in the amount of $1,631,585.00 against the Chapter 7 Trustee of Paragon's bankruptcy estate.

### G.      **Markel's Mishandling of Corval's Claim**

31.      Paragon tendered its claim to Markel on or around September 6, 2018. Markel acknowledged its receipt of the tender the next day and assigned Claim No. MXMP52696 to Paragon's claim (the "*Claim*").

32.      At all relevant times, Corval was and has been Paragon's subrogee with respect to the Claim.

33.      Over the next several weeks, Corval promptly provided to Markel and to Markel's claim adjuster, Frontier Adjusters, Inc. ("*Frontier*"), all the information and documents that Markel and Frontier requested.

34.      Even after Markel and Frontier had received the requested information and documents, however, Markel still failed to promptly act on Paragon's claim. For example, on October 9, 2018, Paul Jordan (Corval's CEO) emailed Frontier's adjuster, Justin Whedbee, stating that he (Jordan) had left Whedbee two messages without receiving a response. Whedbee once again did not respond. Jordan sent another message two weeks later (October 23, 2018) requesting Markel's coverage determination.

35.      On October 23rd, Whedbee responded by requesting additional information from Corval, which information Jordan provided later that same day. Corval's insurance

broker (Ben Brunn) asked Guillermo Cancio (Markel's senior claims examiner) for a timeline on Markel's coverage determination. Cancio did not respond.

36.     On November 2, 2018, Brunn sent Cancio a second email requesting a timeline for Markel's coverage determination. Cancio responded by saying that he was "not at liberty to discuss the status of our investigation in more detail than it is still ongoing [*sic*]. I expect to be able to reach a conclusion as to this loss within the next few weeks."

37.     Cancio and Brunn spoke by telephone two weeks later, at which time Cancio advised Brunn that Markel's investigation was ongoing and that it was attempting to locate Paragon's owner to discuss the Claim.

38.     More than two months later, on February 1, 2019, Brunn emailed Cancio advising that Corval had not received any further communications from Markel or Frontier about the Claim, much less a coverage determination from Markel. Cancio did not respond.

39.     Brunn emailed Cancio again on February 19, 2019, requesting an update on the Claim and noting that Markel's response was overdue. Cancio did not respond.

40.     One week later, Brunn emailed Cancio the sections of the Policy governing Markel's timeliness obligations for handling claims. Cancio did not respond.

41.     On March 5, 2019, Brunn emailed Cancio once again, asking whether Cancio was "still working on this claim" and noting that neither Brunn nor Corval had "received a response from you for the past three months[.]" Cancio finally responded, writing: "We are working the loss. We received contact from our insured recently. We expect to have an update shortly."

42.     On March 7, 2019, Brunn emailed Cancio to request the name and contact information for Markel's head of claims. Cancio did not respond.

43.     Finally, on April 25, 2019—more than seven and a half months after Paragon tendered the Claim and Markel acknowledged receipt of the Claim—Markel denied coverage for the Claim.

## COUNT I
### Declaratory Judgment
### (28 U.S.C. § 2201(a))

44.     Corval incorporates by reference all preceding allegations as if those allegations were fully stated here.

45.     Corval contends that it is legally and equitably subrogated to Paragon's rights, claims, and remedies under the Policy.

46.     Corval contends that coverage exists under the Policy's insuring provisions for losses and ensuing losses arising from Paragon's work on the Project, and that those losses are not excluded under the Policy.

47.     Markel denied coverage to Paragon (and to Corval, as Paragon's subrogee) by letter dated April 25, 2019.

48.     An actual controversy exists between the parties concerning the parties' respective rights, obligations, relations, and remedies under the Policy.

49.     Corval requests a declaration of the Parties' rights, obligations, relations, and remedies under the Policy.

## COUNT II
## Breach of Contract

50.    Corval incorporates by reference all preceding allegations as if those allegations were fully stated here.

51.    The Policy is a valid contract between Markel and Paragon.

52.    Corval is legally and equitably subrogated to Paragon's rights, claims, and remedies under the Policy.

53.    Corval, as Paragon's subrogee, properly performed under the Policy and fulfilled all conditions precedent relating to the Claim.

54.    Markel failed to comply with its obligations under the Policy. Specifically, Markel failed to accept coverage of the Claim and failed to pay insurance proceeds relative to Corval's losses on the Project.

55.    Markel's failure to accept coverage of the Claim breached the Policy.

56.    Corval was damaged as a result of Markel's breach because Corval suffered losses on the Project that are covered under the Policy.

57.    As a direct consequence of Markel's material breach of the Policy, Corval has suffered damages in an amount exceeding $75,000.00 that will be proved at trial.

## COUNT III
## Violations of Texas Insurance Code, Section 541

58.    Corval incorporates by reference all preceding allegations as if those allegations were fully stated here.

59.    Markel is engaged in the business of insurance and therefore is a "Person" as defined by Texas Insurance Code § 541.002(2).

60.     At all relevant times Corval was and has been Paragon's subrogree with respect to the Claim.

**Tex. Ins. Code § 541.060(a)(2)**

61.     Markel was obligated to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim once Markel's liability for the Claim became reasonably clear.

62.     At all times relevant to this action, Markel's liability for the Claim was reasonably clear.

63.     Markel failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim by (1) failing to promptly and fully investigate the Claim by taking months to investigate the Claim without any excuse for the drawn-out investigation; (2) ignoring inquiries from Corval and Corval's insurance broker about the status of the Claim, and failing to provide a reasonable explanation about the status of the Claim or the reason for its delays; and (3) denying the Claim.

64.     Each of these acts or omissions, singularly or together with the others, constituted a violation of Texas Insurance Code § 541.060(a)(2) and proximately caused Corval damages.

**Tex. Ins. Code § 541.060(a)(3)**

65.     Markel was obligated to promptly provide a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its denial of the Claim.

66.     Markel failed to promptly provide a reasonable explanation of the basis for its denial of the Claim by (1) failing to promptly and fully investigate the Claim by taking

months to investigate the Claim without any excuse for the drawn-out investigation; (2) ignoring inquiries from Corval and Corval's insurance broker about the status of the Claim, and failing to provide a reasonable explanation about the status of the Claim or the reason for its delays; and (3) denying the Claim.

67.    Each of these acts or omissions, singularly or together with the others, constituted a violation of Texas Insurance Code § 541.060(a)(3) and proximately caused Corval damages.

### Tex. Ins. Code § 541.060(a)(4)

68.    Markel was obligated to affirm or deny coverage of the Claim within a reasonable time.

69.    Markel failed to affirm or deny coverage of the Claim within a reasonable time by (1) failing to promptly and fully investigate the Claim by taking months to investigate the Claim without any excuse for the drawn-out investigation; (2) ignoring inquiries from Corval and Corval's insurance broker about the status of the Claim, and failing to provide a reasonable explanation about the status of the Claim or the reason for its delays; and (3) denying the Claim.

70.    Each of these acts or omissions, singularly or together with the others, constituted a violation of Texas Insurance Code § 541.060(a)(4) and proximately caused Corval damages.

### Tex. Ins. Code § 541.060(a)(7)

71.    Markel was obligated to pay the Claim after conducting a reasonable investigation with respect to the Claim.

13

72.     Markel refused to pay the Claim and failed to conduct a reasonable investigation of the Claim by (1) failing to promptly and fully investigate the Claim by taking months to investigate the Claim without any excuse for the drawn-out investigation; (2) ignoring inquiries from Corval and Corval's insurance broker about the status of the Claim, and failing to provide a reasonable explanation about the status of the Claim or the reason for its delays; and (3) denying the Claim.

73.     Each of these acts or omissions, singularly or together with the others, constituted a violation of Texas Insurance Code § 541.060(a)(7) and proximately caused Corval damages.

## COUNT IV
### Violations of Texas Insurance Code, Section 542

74.     Corval incorporates by reference all preceding allegations as if those allegations were fully stated here.

75.     At all relevant times, Corval was and has been Paragon's subrogee with respect to the Claim.

### Tex. Ins. Code § 542.055(a)(2)

76.     Paragon gave Markel proper notice of the Claim on or around September 6, 2018.

77.     Markel was under an obligation to commence its investigation within fifteen days after receiving notice of the Claim.

78.     Upon information and belief, Markel failed to commence any investigation of the Claim within 15 days after Markel received notice of the Claim.

14

79.     The Claim is covered under the Policy's insuring provisions and is not excluded. Consequently, Markel violated Texas Insurance Code § 542.055(a)(2).

**Tex. Ins. Code § 542.056**

80.     Paragon gave Markel proper notice of the Claim on or around September 6, 2018.

81.     Markel was under an obligation to notify Paragon in writing that the Claim was accepted or rejected within 15 business days after Markel received all items, statements, and forms required by Markel to secure final proof of loss. In addition, if Markel needed additional time to investigate the Claim, Markel was under an obligation to so notify Paragon and, in any event, to accept or reject the Claim within 45 days after giving Paragon notice that it needed additional time.

82.     Markel failed to notify Paragon about the acceptance or rejection of the Claim within 15 business days after receiving all items, statements, and forms required by Markel to secure final proof of loss.

83.     Markel failed to notify Paragon about the acceptance or rejection of the Claim within 45 days after notifying Paragon that it needed additional time to investigate the Claim.

84.     The Claim is covered under the Policy's insuring provisions and is not excluded. Consequently, Markel violated Texas Insurance Code § 542.056.

**Tex. Ins. Code § 542.058**

85.     Paragon gave Markel proper notice of the Claim on or around September 6, 2018.

86.     Markel was under an obligation to promptly pay the Claim.

87.     By improperly denying the Claim, Markel delayed payment of the Claim for a time exceeding the period specified by statute.

88.     By improperly denying the Claim, Markel delayed payment of the Claim for more than 60 days.

89.     The Claim is covered under the Policy's insuring provisions and is not excluded. Consequently, Markel violated Texas Insurance Code § 542.058.

**Tex. Ins. Code § 542.060**

90.     The Claim is covered under the Policy's insuring provisions and is not excluded. Consequently, by its conduct as described above, Markel violated Section 542 of the Texas Insurance Code.

91.     As a consequence of Markel's above-described violations of Section 542 of the Texas Insurance Code, Markel is liable for 18% annual interest and Corval's reasonable attorneys' fees.

**DEMAND FOR JURY TRIAL**

92.     Pursuant to Rule 38(b)(1) of the Federal Rules of Civil Procedure, Corval hereby demands a jury trial on any issue triable of right by a jury.

**REQUEST FOR RELIEF**

**WHEREFORE**, Corval respectfully requests that the Court enter judgment in its favor and against Markel as follows:

1.     On **Count I (Declaratory Judgment)**, a declaration stating as follows:

   a.     The Claim is covered under the Policy's insuring provisions; and

      b.    The Claim is not excluded under the Policy's exclusions.

2.    On **Count II (Breach of Contract)**, awarding Corval money damages against Markel in an amount exceeding $75,000.00 to be proved at trial;

3.    On **Count III (Violations of Texas Insurance Code, Section 541)**, awarding Corval money damages against Markel in an amount exceeding $75,000.00 to be proved at trial;

4.    On **Count IV (Violations of Texas Insurance Code, Section 542)**, awarding Corval money damages against Markel in an amount exceeding $75,000.00 to be proved at trial;

5.    Awarding Corval applicable prejudgment and post-judgment interest;

6.    Awarding Corval reasonable attorneys' fees, costs, and disbursements incurred in connection with this action (under, among other things, Tex. Civ. Prac. & Rem. Code § 38.001, and under Tex. Ins. Code §§ 541.152(a), 542.060(b)); and

7.    Awarding any other legal or equitable relief that the Court deems just and appropriate.

Dated: April 15, 2021

*/s/ Jeffrey G. Tinkham*
Jeffrey G. Tinkham, Of Counsel
TBA No. 20056300
S.D.T. Adm. No. 4725
**MARTIN, DISIERE, JEFFERSON &
WISDOM, LLP**
808 Travis Street, 20th Floor
Houston, TX 77002
T: (713) 632-1700
F: (713) 222-0101
tinkham@mdjwlaw.com

–and–

Ernest F. Peake (*pro hac vice forthcoming*)
James M. Jorissen (*pro hac vice forthcoming*)
Paul M. Shapiro (*pro hac vice forthcoming*)
**TAFT STETTINIUS & HOLLISTER LLP**
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2157
T: (612) 977-8400
F: (612) 977-8650
epeake@taftlaw.com
jjorissen@taftlaw.com
pshapiro@taftlaw.com

***Attorneys for Plaintiff***
***Corval Builders & Erectors, Inc.***

13302824v1

18